**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LARRENCE MAJOR CLAY,<br>　　　Petitioner,<br><br>　　　　v.<br><br>MICHELE MILLER, Warden,<br><br>　　　Respondent. | CASE NO.　5:16-cv-00525<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>MAGISTRATE JUDGE DAVID A. RUIZ<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Larrence Major Clay (hereinafter "Petitioner" or "Clay"), challenges the constitutionality of his conviction in the case of *State v. Clay*, Summit County Court of Common Pleas Case No. CR-2012-07-2154. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 4, 2016. (R. 1). On August 26, 2016, Warden Michele Miller ("Respondent") filed her Return of Writ.[1] (R. 11). Petitioner filed a traverse on September 23, 2016. (R. 12), to which Respondent has not filed a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. [2] Petitioner also filed a motion for

---

[1] Prior to the filing of the Return of Writ, Petitioner filed a motion for summary judgment. (R. 7). The motion was denied by the District Court Judge upon the Report and Recommendation of Magistrate Judge Kenneth S. McHargh. (R. 8 & R 9).

[2] Previously, this matter had been referred to Magistrate Judge Kenneth S. McHargh, and was subsequently referred to the undersigned magistrate judge upon the former's retirement.

default judgment (R. 13), which this Court denies in a separate order.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Ninth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Clay's conviction as follows:

> {¶ 2} In the afternoon of July 19, 2012, Clay, Jeremiah Walker, Derek Edwards, and James ("Linny") and Jordan Wells were walking through the Park Lane Apartment complex to a nearby gas station. The five men were walking in an "X" formation, with Edwards and Linny up front, Clay in the middle, and Walker and Jordan following approximately eight feet behind. As the group was walking a shot was fired. Edwards was struck by a single bullet to his neck and collapsed. He died shortly thereafter. After the shooting, Walker called 911 and the others fled. The Wells brothers did not run far and were approached by officers that had arrived on scene. Walker and Linny gave statements to the police. Jordan spoke to officers, but denied seeing anything.
>
> {¶ 3} Based on the statements of Walker and Linny, the police identified Clay as a suspect. Officers arrived at Clay's parents' house approximately an hour-and-a-half after the shooting. When Clay came down the stairs to speak to officers he was shirtless, his arms were wet, he smelled strongly of bleach, and he was wiping his hands on a washcloth. Clay denied being at the scene of the shooting. After securing a search warrant, the police collected the washcloth and arrested Clay. Gunshot residue was later found on the washcloth.
>
> {¶ 4} Clay was indicted for aggravated murder, murder, and having a weapon while under disability. The case proceeded to trial, and a jury acquitted Clay of aggravated murder, convicted him of having a weapon while under disability, and hung on the murder count. The State retried Clay on the murder charge, and he was convicted by jury. Clay now appeals and raises four assignments of error for our review. To facilitate the analysis, we rearrange his assignments of error.

*State v. Clay*, 2014-Ohio-3806 at ¶¶2-4, 2014 WL 4347590 (Ohio Ct. App., Sept. 3, 2015), *appeal not allowed*, 2015-Ohio-842, 141 Ohio St. 3d 1491, 26 N.E.3d 825 (Ohio 2015).

## II.  Procedural History

**A.  Conviction**

On August 8, 2012, a Summit County Grand Jury indicted Clay for one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A). (R. 11-1, PageID# 175, Exh. 1).  On August 24, 2012, a supplemental indictment was filed adding a firearm specification to the aggravated murder charge; an additional count of murder in violation of O.R.C. § 2903.02(A) also carrying a firearm specification; and, one count of having weapons while under disability in violation of O.R.C. § 2923.13. (R. 11-1, PageID# 176-177, Exh. 2).   Clay, represented by counsel, pleaded "not guilty" on all counts. (R. 11-1, PageID# 178, Exh. 3).

On October 12, 2012, Clay, through counsel, filed a motion to suppress evidence and statements made to police. (R. 11-1, PageID# 179-183, Exh. 4).   On October 18, 2012, the trial court held a hearing to address Clay's motion. (R. 11-1, PageID# 184-188, Exh. 5).   Finding that "a reasonable police officer in light of the circumstances of the instant case would not have concluded that Clay was invoking the right to counsel," the motion was denied. (*Id*. at PageID# 188).[3]

After a jury trial, on February 28, 2013, a jury found Clay guilty of having weapons while under disability and not guilty of aggravated murder. (R. 11-1, PageID# 189-193, Exh. 6).   With respect to the count of murder, the jury was unable to reach a verdict and the court declared a hung jury. (*Id*.; R. 11-1, PageID# 194, Exh. 7).

After a second jury trial, on May 23, 2013, Clay was found guilty of both murder and the

---

[3]  On February 13, 2013, Clay's father filed a complaint with the trial court alleging the police were tampering with evidence by suggesting that he "did not tell his son to clean up the bathroom." (R. 11-1, PageID# 443-461. Exh. 30).   The court struck the document as irrelevant as Clay's father was neither a party to the action nor Clay's counsel.   (R. 11-1, PageID# 462, Exh. 31).

accompanying firearm specification. (R. 11-1, PageID# 195-196, Exh. 8).

On May 24, 2013, Clay was sentenced to an aggregate prison term of eighteen years to life. (R. 11-1, PageID# 197-198, Exh. 9).

Approximately two weeks after sentencing, on June 6, 2013, Clay, through counsel, filed a motion a new trial based on the following:

1) Misconduct on the Part of the Prosecuting Attorney;

2) The verdict is not sustained by sufficient evidence;

3) Error of law occurring at the trial, and;

4) New discovered Evidence.

(R. 11-1, PageID# 199-202, Exh. 10).   On June 26, 2013, the trial court denied Clay's motion for a new trial. (R. 11-1, PageID# 212, Exh. 12).

**B.   Direct Appeal**

On July 11, 2013, Petitioner, through new counsel, filed a Notice of Appeal with the state appellate court. (R 11-1, PageID# 213, Exh. 13).   Petitioner raised the following assignments of error:

1. The trial court abused its discretion and committed plain error when it declared a State's witness to be a court witness and failed to give limiting instructions, in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitution.

2. Larrence Clay's convictions for murder and having a weapon while under disability were not supported by sufficient evidence in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

3. Larrence Clay's convictions for murder and having a weapon while under disability were against the manifest weight of the evidence, in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution, and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

> 4. The trial court abused it's [sic] discretion in denying the opportunity to interview a potential exculpatory witness and in overruling a motion for a new trial, in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

(R. 11-1, PageID# 214-243, Exh. 14).

On September 3, 2014, the Court of Appeals affirmed the judgment of the trial court. (R. 11-1, PageID# 291-318, Exh. 17).

On March 9, 2015, Petitioner, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (R. 11-1, PageID# 319-320, Exh. 18). Petitioner raised one proposition of law in his jurisdictional memorandum:

> 1. A Defendant in a criminal trial has a fundamental Due Process and Sixth Amendment right to investigate potential exculpatory evidence, and a trial court abuses its discretion and violates these rights when the trial court actively prevents defendant from investigating the evidence necessary to show the prejudice and harm which would support a mistrial or new trial.

(R. 11-1, PageID# 321-359, Exh. 19).

On March 11, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 11-1, PageID# 361, Exh. 21).

**C. Postconviction Relief**

On September 24, 2015, Petitioner, *pro se*, filed a petition to vacate or set aside sentence and requested an evidentiary hearing. (R.11-1, PageID# 362-400, Exh. 23). On October 7, 2015, the State filed a motion to dismiss arguing the petition was untimely. (R. 11-1, PageID# 401-403, Exh. 24). On November 5, 2015, the common pleas court agreed with the State and denied the petition as untimely. (R. 11-1, PageID# 405, Exh. 24).

On November 30, 2015 and December 14, 2015, Clay, *pro se*, filed a motion for relief from the November 5, 2015 judgment pursuant to Ohio Civil Rules 60(b)(4) & (6) and a motion for

5

leave to amend his petition pursuant to Ohio Civil Rule 15(A)(E). (R. 11-1, PageID# 406-433, Exhs. 25 & 26).   On January 8, 2016, the court denied Clay's motions, construing them as untimely and successive petitions for post-conviction relief. (R. 11-1, PageID# 440-442, Exh. 29).

There is no indication that Clay appealed the decision to the state appellate court.

### D.  Other State Court Filings

On February 2, 2016, Clay filed a "Notice and Demand" with the common pleas court asserting that:

> Notice (In Lieu of Motion) of my challenge to the Political Jurisdiction of the State of Ohio over my father's alleged statement against me and Demand that all charges against me be dismissed as the State of Ohio cannot properly establish that it has Political or civil contractual Jurisdiction over my father's (personal jurisdiction), alleged statement against me.

(R. 11-1, PageID# 463-475, Exh. 32).   The court, noting that similar requests had already been denied on two separate occasions, declined to review Clay's third attempt and denied the demand for dismissal of the charges. (R. 11-1, PageID# 476-477, Exh. 33).

### E.  Federal Habeas Petition

On March 4, 2016, Clay filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> Ground One: Violation of the 14th Amend. of the U.S. Const. & Art. 1, 6& 10 of the Ohio Const.
>
> Supporting Facts: When a aggravated murder indictment is obtained/returned by the presentation of material evidence known to the prosecuting authorities to have been falsified, due process is violated.
>
> Ground Two:
>
> Supporting Facts: That Fatal variance existed between Indictment & Evidence at trial, when the State relied upon an unsigned statement as its Material Evidence during the Grand Jury proceeding.

> Ground Three:
>
> Supporting Facts: Petitioner did not testify during his trials (Aggravated/Murder), due to fear of the shooter.
>
> Ground Four:
>
> Supporting Facts: The State cannot provide a signed statement by my father, Larry Major Clay to which is a requirement when relying on a statement as "Material Evidence."

(R. 1, PageID# 6-11).[4]

### III. Exhaustion and Procedural Default

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted). A petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*,

---

4 Petitioner's grounds are quoted verbatim. Grounds two through four were left blank in the petition.

7

456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Engle*, 456 U.S. at 125 n. 28. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

The only alleged error that Petitioner raised all the way up to the Supreme Court of Ohio is the argument that the trial court erred by not granting a mistrial so that defense counsel could investigate potential exculpatory evidence. (R. 11-1, PageID# 321-359, Exh. 19). None of Petitioner's four grounds for relief in the petition for writ of habeas corpus raise an argument that is even remotely connected to this line of argument. Nevertheless, Respondent does not argue that any of Petitioner's grounds for relief are procedurally defaulted. (R. 11). While Respondent does contend that ground three is unexhausted, she does not argue that it should be dismissed as defaulted. (R. 11, PageID# 167).

> Procedural default is normally "a defense 'that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter.'" *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (quoting *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997) (internal quotation marks omitted)). Procedural default is not a jurisdictional matter, and we need not raise the issue *sua sponte*. *Id.* (citing *Trest*, 522 U.S. at 89). Nonetheless, the fact "[t]hat the [state] failed to argue procedural default in the district court does not entitle a habeas petitioner to a merits-based review of his claim." *Palmer v. Bagley*, 330 F. App'x 92, 101 (6th Cir. 2009) (citing *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000)). We may choose to consider procedural default arguments even when they are raised for the first time on appeal. *See, e.g., United States v. Busch*, 411 F. App'x 872, 874-75 (6th Cir. 2011); *Palmer*, 330 F. App'x at 101; *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).

*Arias v. Lafler*, 511 Fed. App'x 440, 444 (6th Cir. 2013); *see also Grady v. United States*, 2015

U.S. App. LEXIS 23074 (6th Cir. Jun. 19, 2015) (noting that "[t]he main concern with raising procedural default *sua sponte* is that a petitioner not be disadvantaged without having had an opportunity to respond" and not being afforded an opportunity to demonstrate the necessary cause and prejudice, or his actual innocence, to excuse a procedural default) (quoting *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005)).

Although an appellate court is not precluded from addressing a procedural default even where the defense was not raised by the State below, this Court declines to raise the issue *sua sponte*. While the Court could invite additional briefing from both sides to address the issue, this would only result in unnecessary delay. As explained below, Petitioner fails to set forth a comprehensible argument demonstrating that he is entitled to habeas relief.

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

9

1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Analysis**

Respondent asserts that the habeas petition is a challenge to interpret. (R. 11, PageID# 164). Both the petition as well as Clay's accompanying memorandum in support fail to articulate a clear basis for habeas relief. (R. 1 & R. 1-1). The latter, despite being nearly forty pages in length, consists mainly of quotations from the transcript. (R. 1-1). The Sixth Circuit has held that

"*pro se* pleadings are to be liberally construed and that in some cases active interpretation is required to construe a *pro se* petition to encompass any allegation stating federal relief." *Johnson v. United States*, 457 Fed. App'x 462, 467 (6th Cir. 2012) (internal quotation marks omitted) (citing *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985); *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)). Nevertheless, it is generally accepted that generous construction of *pro se* filings is not limitless. Liberal construction "does not require those courts to conjure up questions never squarely presented to them," "to construct full blown claims from sentence fragments," "to anticipate all arguments that clever counsel may present in some appellate future," or "to transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *accord Crawford v. Crestar Foods*, 210 F.3d 371 (6th Cir. 2000); *Spencer-Dey v. G.C. Servs.*, 2016 U.S. Dist. LEXIS 72587 at *2 (N.D. Ohio June 3, 2016) (Polster, J); *Fayne v. Clipper*, 2013 WL 459895 at *3 (N.D. Ohio Feb. 6, 2013) (Boyko, J.)

Respondent contends that each of Petitioner's grounds for relief, save perhaps for ground three, revolve around a single factual contention stemming from an alleged statement attributed to Petitioner's father. (R. 11, PageID# 164-169). As best as this Court can decipher, Petitioner states that sometime after the shooting, police officers arrived at his residence and found him smelling of bleach. (R. 1-1, PageID# 18). When officers inquired why Petitioner smelled of bleach, Petitioner responded that his father had asked him to clean the bath tub. (*Id*.) Clay takes issue with a police report suggesting that Clay's father denied asking his son to clean the tub. (*Id*.) Despite the Court's extensive review of the briefs and the state court filings, it is not entirely clear whether Clay's position is that his father never made such a statement or whether Clay is simply

11

arguing that the State could not produce written documentation that such a statement was made. (*Id.*; R. 12).

At Petitioner's *first* trial, the following related testimony was elicited first from police officer David Crockett and also from police sergeant David Garro:

> Q: And when you made contact with the defendant, what did you observe?
>
> A: Well, he was coming downstairs, they yelled for him to come down. He walked downstairs, no shirt. I could see his arms were wet and he was carrying a rag and it reeked of bleach when he walked down the steps.
>
> * * *
>
> Q: What specifically did you ask him to start out the interview?
>
> A: Why his hands were wet and why he smelled like bleach.
>
> Q: And what did he respond when he answered that question?
>
> A: Stated he was asked to wash the bathtub and sink that night.
>
> Q: Did you do any further investigation on that statement?
>
> A: Yes.
>
> Q: Were you able to ascertain whether that statement was correct?
>
> [Prior to any response from the witness, an objection by the defense was sustained]

(R. 11-5, PageID# 972-976).

> Q: Was there an attempt by the Akron Police Department to corroborate Mr. Clay's statement about the fact that he was washing his -- he had been asked to wash the tub?
>
> A: Yes, there was.
>
> Q: Okay. And who asked who what regarding that?
>
> [Defense Counsel:] Objection

        THE COURT:      Overruled. Officer Crockett asked Larrance Clay's father if he, in fact, had directed Larrance to wash out the tub.

        [Side-bar Discussion]

Q:    Sergeant Garro, in the course of your investigation in this case, was there an attempt to corroborate whether or not -- again, I don't want to get into what anyone told you, okay, but was there an attempt to corroborate whether or not Mr. Clay was actually directed by his father to wash his hands or wash the tub that night?

A:    Yes. I am aware of an attempt by Officer Crockett to corroborate that information.

Q:    Okay. And were you able or was the Akron Police Department in part of this investigation able to corroborate? I mean, you may not have asked the question. Were you able to back up his statement that he washed --

A:    Excuse me. Officer Crockett and members of the Akron Police Department at the house that night were unable to corroborate that statement.

(R. 11-8, PageID# 1266-1272).

At Petitioner's second trial resulting in the convictions he now challenges, the following related testimony was elicited from officer Crockett:[5]

Q:    And what did you observe when Mr. Clay came downstairs?

A:    He was coming downstairs, he had no shirt on. I was -- I could see his arms were wet and reeked of bleach.

Q:    When you say reeked of bleach, could you smell it from a distance or did he have to get up close to you?

A:    As he got closer to the bottom of the steps I could smell him.

        \* \* \*

A:    I asked him why his hands -- why he had bleach on his hands, and he was

---

[5] Sergeant Garro, while he testified at the second trial, does not appear to have mentioned Clay smelling of bleach or make any reference to Clay's father. (R. 11-16, PageID# 2098-2166).

13

> saying that he was told to clean the bathtub because he had hair products that he uses, that he was told to clean it.

(R. 11-19, PageID# 2402- 2405).

It is Respondent's position that the issue is a "relatively minor matter of impeachment" as it merely goes to the issue of whether Clay was attempting to wash off gunshot primer residue ("GSR"). (R. 11, PageID# 165). "Particles 'highly indicative of [GSR]' were found on . . . the washcloth, and Clay's shorts." *Clay*, 2014-Ohio-3806 at ¶48. The above testimony does not indicate that the statement of Clay's father was ever presented at trial. Furthermore, the positive presence of GSR on the washcloth and Clay's shorts arguably renders moot, or at the very least rather insignificant, the issue of why Clay was wet and smelling of bleach not long after the shooting. Regardless of which theory Petitioner advances, he has failed to show that his conviction was contrary to or involved an unreasonable application of clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.

**A.  Ground One: Indictment**

In his first ground for relief, Petitioner contends that the indictment was obtained by the presentation of knowingly false evidence. (R. 1). Neither the petition nor his memorandum in support clearly identifies what evidence constitutes the allegedly false evidence presented to the grand jury. (R. 1 & R. 1-1). The Court assumes from the petition that Clay is referencing his father's alleged statement.

It is well settled law that the federal Constitution's guarantee of a grand jury indictment does *not* apply to the states. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972)); *accord Lane v. Coleman*, 2014 WL 849179 at *17 (N.D. Ohio Mar. 4, 2014). In addition, "the Constitution does

not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz*, 731 F.3d at 369 (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954, 96 S. Ct. 1731, 48 L. Ed. 2d 198 (1976)). The Due Process Clause of the Fourteenth Amendment does require a state to give "fair notice of criminal charges sufficient to allow a defendant to prepare an adequate defense." *Bruce v. Welch*, 572 Fed. App'x 325, 329 (6th Cir. 2014) (*citing Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006)). In order to "pass constitutional muster, an indictment must meet a two-pronged test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Id.* (*quoting United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992)).

Here, Petitioner has not alleged that he lacked fair notice of the charges against him. As such, any defect in the indictment is immaterial and fails to present a cognizable claim.[6] Furthermore, while the Court cannot review whether the grand jury proceedings complied with Ohio law or procedures, it bears noting that Petitioner has not conclusively demonstrated that any representation with respect to his father's statement was actually false, that the prosecution was aware of the alleged falsity, or that the disputed statement was actually presented to the grand jury.

As such, ground one is without merit.

---

6  To the extent Clay is alleging a violation of Ohio law as it relates to his indictments, such a claim is not cognizable.   While Ohio may require a grand jury indictment pursuant to its own statutory or constitutional rules, any violation of such right is purely an issue of state law and the United States Supreme Court has often stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).   "The violation of the state right to a grand jury indictment in Ohio, and all the procedural safeguards appurtenant thereto, does not automatically implicate a federal constitutional right." *Lane*, 2014 WL 849179 at *17.

**B.      Ground Two: Variance**

In his second ground for relief, Clay asserts that a "fatal variance" existed between the indictment and the evidence presented at trial, again due to Clay's unsubstantiated view that a false statement existed and his belief that said statement was presented to the grand jury. (R. 1, PageID# 8).

To the extent Clay is merely reiterating the substance of ground one, such a claim fails. Conversely, to the extent Clay is truly claiming some variance existed, he misunderstands the import of such a claim. In *United States v. Shephard*, 495 Fed. App'x 553, 557 (6th Cir. 2012), the Court of Appeals explained the difference between two related concepts – constructive amendments and variances:

> A constructive amendment occurs "'when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *Ferguson*, 681 F.3d at 830 (quoting *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002)). Because constructive amendments infringe upon the Fifth Amendment's grand jury guarantee, they are considered "per se prejudicial." *Id*. (*quoting United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)). Variances, however, are not per se prejudicial. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). They generally occur where the terms of the indictment are not changed, but the evidence submitted at trial "proves facts materially different from those alleged in the indictment." *Id*. (quoting *Prince*, 214 F.3d at 756-57). A variance can be established based on the evidence submitted at trial. *Id*. at 522.

*Shephard*, 485 Fed. App'x at 557.

In order "[t]o obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000) (*citing United States v. Maliszewski*, 161 F.3d 992, 1014 (6th Cir. 1998)); *see also United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006);

16

*United States v. Suarez*, 263 F.3d 468, 478 (6th Cir. 2001). "[I]n the case of a variance, prejudice to substantial rights occurs if the defendant is not 'enabled to present his defense and not be taken by surprise by the evidence offered at trial,' or is not 'protected against another prosecution for the same offense.'" *United States v. Budd*, 496 F.3d 517, 527 (6th Cir. 2007) (*quoting Berger v. United States*, 295 U.S. 78, 82, 55 S. Ct. 629, 79 L. Ed. 1314 (1935)).

Clay's argument lacks merit. Both the original indictment and the supplemental indictment charged Clay first with aggravated murder and then with murder for the shooting death of Derek Edwards on or about July 19, 2012.[7] (R. 11-1, PageID# 175-177, Exhs. 1 & 2). After his second trial, the conviction currently challenged, Clay was convicted of murder along with the accompanying firearm specification and having a weapon while under a disability. (R. 11-1, PageID# 197-198, Exh. 9). Clay has not argued that a constructive amendment to the indictment occurred, nor could he reasonably do so. As for the alleged variance, the evidence presented at trial clearly attempted to prove, and did prove to the jury's satisfaction, that Clay shot and killed the victim, Derek Edwards, on or about July 19, 2012. *Clay*, 2014-Ohio-3806 at ¶¶28-51. Clay has not shown that any variance actually occurred, nor has he shown that he was unable to present his defense or was taken by surprise by the evidence offered at trial. As such, ground two is without merit.

**C.  Ground Three: Clay's Decision Not To Testify At Trial**

In his third ground for relief, Petitioner states that he did not testify at either of his trials "due to fear of the shooter." (R. 1, PageID# 9). Clay contends that "[t]here was no reason to

---

7  The indictments also carried firearm specifications as well as a separate charge of having a weapon while under a disability. The name of the victim was redacted in both indictments submitted to the Court. (R. 11-1, PageID# 175-177, Exhs. 1 & 2).

testify when the evidence pointed to the killer and the Petitioner believed the justice [sic] would prevail in his favor." (R. 1, PageID# 11).

It is beyond a doubt that "a criminal defendant has a fundamental constitutional right to testify on his own behalf." *White v. Steele*, 629 Fed. App'x 690, 697 (6th Cir. 2015), *cert. denied sub nom. White v. Jordan*, 2016 WL 3365496 (U.S. Oct. 3, 2016); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997) (*citing Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). Petitioner, however, has not argued that he was denied this right.   In other words, he has not suggested that he was prevented from testifying by the court, the State, or even by his own counsel.   Instead, Petitioner, without any real argument, simply avers that: (1) he was afraid to testify; and (2) he did not testify because he thought the evidence pointed to another killer and "justice would prevail in his favor." (R. 1, PageID# 9-11).   Other than these two sentences, Clay makes no real argument, fails to cite any case law, and sets forth no additional facts supporting his claim.   Quite simply, Clay has failed to develop any argument and the Court considers it waived.[8] *Mosley v. Walker*, 2010 WL 5393931 at *20 (E.D. Cal. Dec. 22, 2010) ("Petitioner does not indicate what testimony he would have presented that would have brought about a different verdict. Regretting the decision not to testify without providing any indication of what testimony would have been elicited is insufficient to warrant habeas relief."); *cf. Hansend v. Lafler*, 2013 WL 5428726 at *8 (W.D. Mich. Sept. 26, 2013) (finding a petitioner's decision to testify against counsel's advice and subsequent regret as to the consequences of the decision did not furnish a basis for habeas relief).

---

[8] The Court deems ground three waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. May 11, 2006).

Ground three fails to articulate an alleged violation of clearly established federal law and should be dismissed.

**D.     Ground Four: State's Inability To Present a Signed Statement**

Petitioner's final ground for relief is also far from clear.   It appears related to Clay's first two grounds for relief in that he argues that the State cannot provide a signed statement by his father, presumably again related to the issue of whether or not his father had told Clay to clean the tub. (R. 1, PageID# 11).   Petitioner contends that production of such a signed statement is a requirement when said statement is relied upon as "material evidence." (*Id*.)    To the extent ground four merely rehashes ground one's challenge of the indictment, such a claim is not cognizable as explained above.

If it is Clay's intent to argue that his father's statement was improperly admitted as evidence at trial where no signed statement was presented, such a claim is not cognizable. "[H]abeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")   Federal habeas courts "do not pass upon errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001).   "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989, 121 S. Ct. 1643, 149 L. Ed. 2d 502 (2001) (*quoting Montana v. Egelhoff*, 518 U.S. 37, 43, 135 L. Ed. 2d 361, 116 S. Ct. 2013 (1996)).

Even if such a claim were cognizable, the assertion that Clay's father denied asking Clay to clean the tub does not appear to have been presented to the jury as evidence at Clay's *second* trial.[9] (R. 11-19, PageID# 2402- 2405). While evidence presented at Clay's first trial is immaterial to his conviction for murder after the second trial, even at his first trial, officer Garro merely testified that other members of the police department "were unable to corroborate" Petitioner's statement that his father asked him to clean the tub. (R. 11-8, PageID# 1266-1272). Absent a substantial inferential leap, this testimony cannot reasonably be construed as a testimony that Clay's father specifically denied asking his son to clean the tub.

As such, ground four is without merit.

## V. Conclusion

For the foregoing reasons, it is recommended that Barnett's Petition be DENIED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: May 23, 2017

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** See *United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**

---

9 If the statement of Clay's father was admitted through some other source other than the testimony of officers Crockett or Garro, Petitioner has not drawn the Court's attention to those portions of the record.